The **UNITED STATES** of America, for the Use of **ERIE CITY IRON WORKS**, a Pennsylvania Corporation, Plaintiff,

v.

**FULLERTON CONSTRUCTION COMPANY, Incorporated, a Corporation, and Continental Casualty Company, a Corporation, Defendants.**

**Civ. A. No. 68–323.**

United States District Court
D. South Carolina,
Columbia Division.

April 30, 1969.

Wilburn Brewer, Jr., Cooper, Gary, Nexsen & Pruet, Columbia, S. C., for plaintiff.

Michael H. Quinn, Fulmer, Barnes, Berry & Austin, Columbia, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This action was instituted pursuant to the Miller Act, 40 U.S.C.A. § 270a et seq.[1] and is before this court on defendants' motion for summary judgment.

The facts surrounding this controversy are essentially undisputed. On October 30, 1964, the defendant, Fullerton Construction Company, and its surety, Continental Casualty Company, entered into a contract with the United States of America for the construction of a central heating and refrigeration plant at Fort Jackson, South Carolina. This contract contained a one-year guaranty provision covering materials and workmanship which began running upon the date of beneficial or final acceptance by the government, whichever came earlier.[2] On January 22, 1965 the defendant Fullerton entered into a subcontract with the plaintiff whereby the plaintiff agreed to furnish certain labor and material necessary for the installation of three boilers called for under the original contract between the United States of America and the defendants.

On May 23, 1966 all construction required by the government contract was substantially complete. On August 9, 1966, and September 22, 1966, the entire project, including the work performed by the plaintiff, was inspected and approved by the government. Approximately six and one-half months elapsed after the government had inspected the project. Then between April 6 and April

[1]. The Miller Act, 40 U.S.C.A. Section 270b(b) provides:

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. * * * "

[2]. The guaranty provision on which plaintiff relies and as found in the prime contract between the government and Fullerton Construction Company is as follows:

"The following equipment to be furnished under this section of the specifications shall be guaranteed for a period of 1 year from the date of acceptance, either for beneficial use or final acceptance, whichever is earlier, against defective materials, design and workmanship:" (Among other equipment listed were the boilers furnished by plaintiff).

The guaranty provision further provided:

"Upon receipt of notice from the Government of failure of any part of the guaranteed equipment during the guaranty period, the affected part or parts shall be replaced promptly with new parts by and at the expense of the Contractor."

15 of 1967 the plaintiff performed additional work and supplied additional materials for the purpose of correcting defects and/or making repairs to the work previously completed by the plaintiff pursuant to his subcontract with the defendant Fullerton. This was done at the request of the government pursuant to and in accordance with the one year guaranty contained in the prime contract. (Note 2, *supra*). Within a year thereafter, on April 12, 1968, the plaintiff instituted the present action contending that the additional work done and materials provided under the guaranty constituted "labor performed or material supplied" in performance of the original contract, and that the suit was timely under Section 270b(b) of the Miller Act, (Note 1, *supra*). The defendants maintain that the action brought by the plaintiff is untimely, contending that the correction of defects and the making of repairs, regardless of the fact that the same were accomplished in accordance with the guaranty provision in the prime contract, do not extend the statutory time limit for instituting suit under the Miller Act, and do not constitute work performed or material supplied as a part of the original contract. Thus, the precise issue for determination is whether the making of repairs and/or the correcting of defects pursuant to a one-year guaranty provision contained in the original contract constitute labor performed or material supplied as a part of the original contract.

 After a careful review of the authorities, the court has concluded that the issue must be resolved in the negative and, therefore, that the plaintiff's action is untimely under Section 270b(b), (Note 1, *supra*). The applicable legal test of Section 270b(b), as recently stated by the Fourth Circuit in United States of America for Use of Noland Company v. Andrews and Parrish, et al., 406 F.2d 790 (decided Jan. 24, 1969), is "whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'" Thus, under the decided cases of this jurisdiction, as well as other jurisdictions, the furnishing of labor and materials for the purpose of correcting defects or making repairs of the original undertaking is not labor performed or material supplied as a part of the original contract and will not extend the statutory time limitation. United States of America ex rel. for Use of Noland Company v. Andrews and Parrish, et al., *supra*; United States of America ex rel. Palmer Asphalt Co. v. Debardelaben, 278 F.Supp. 722 (D.C.S.C.1967), aff'd, 4 Cir., 388 F.2d 309 (4th Cir. 1967); United States of America ex rel. Austin v. Western Electric Co., 337 F.2d 568 (9th Cir. 1964); United States of America ex rel. Weithman v. Buckeye Union Cas. Company, 207 F.Supp. 552 (N.D.Ohio 1962); United States of America ex rel. John T. Evanick & Co. v. Merritt-Chapman & Scott Corp., 185 F.Supp. 587 (M.D.Pa.1960). See also United States ex rel. State Electric Supply Co. v. Hesselden Construction Co., 404 F.2d 774 (10th Cir. 1968).

Unquestionably, the labor and material furnished by the plaintiff in April of 1967 was for the sole purpose of correcting the previously supplied defective materials and/or making repairs to such previously supplied materials or parts. It cannot be said that the materials supplied in April of 1967 by the plaintiff were materials that were called for by the terms of the original contract and not supplied until April of 1967. The factual situation here does not present a case where there has been a failure in some manner to fully complete the original contract, such as where some parts or materials called for by the contract have never been supplied. It is undisputed that all work performed and materials supplied during April of 1967 were merely for the purpose of correcting defects, or making repairs, to materials or parts already furnished, following the inspection and acceptance of the project by the government, and the fact that the one-year guaranty existed as a part of

the original contract cannot change the status of the April work from that of curing defects or of making repairs to work done or materials furnished as a part of the original contract.[3]

Plaintiff cites the case of Trinity Universal Insurance Company v. Girdner, 379 F.2d 317 (5th Cir. 1967), as authority for its position. In that case the court held that work performed to correct defects or make repairs in the work originally completed, upon demand of the government, was work performed within the language of the statute. However, in the *Girdner* case the only work done by the subcontractor within the year before the commencement of the suit was to replace some defective pipe installation which he had previously installed and to replace a seal in an air conditioning unit. The subcontractor performed these operations on the demand of the government inspector, who had refused to approve the original work. Thus, the *Girdner* case is readily distinguishable from the case at hand in that here the government approved the original work, and the replacement of the defective parts was not made until six and one-half months following the inspection.

The commencement of an action within the one year statutory time limitation is a condition precedent to the maintenance of an action under the Miller Act. The correction of the defects and the making of the repairs by the Use plaintiff in the month of April 1967, although performed pursuant to the one-year guaranty in the prime contract (Note 2, *supra*), did not serve to toll the running of the one-year statutory limitation.

Accordingly, it is concluded that plaintiff failed to timely institute suit as required by Section 270b(b) of the Miller Act (Note 1, *supra*), and that defendants' motion for summary judgment in their behalf should be granted.

Let judgment be entered accordingly. And it is so ordered.

---

3. It is recognized that the precise issue herein involved is one of novel impression. Counsel for the parties in their able and persuasive briefs and arguments before the court have been unable to cite a case in which the effect of a contractor's providing labor and materials for repairs and/or correcting defects pursuant to a warranty or guaranty provision of the prime contract, after the work required by the contract has been fully performed, inspected and accepted by the government, has been expressly adjudicated. Neither has the court been able to find such a case.